District Court Rendered a Judgment in Favor of the Company for Determining that the United States had wrongfully levied upon the company's funds to satisfy the tax liability of another taxpayer. And the district court then determined what the interest rate that the United States would have to pay on that judgment would be. And that is the issue that we've appealed on. We're not appealing on the correctness of the judgment for wrongful levy. And, in fact, that judgment has been paid. And this case presents a question of statutory interpretation on which we're not aware of any case law. And so it's purely a question of reading the statute and what does the statute mean. And we submit that the district court incorrectly interpreted the statute. Section 70. Let me ask you before you go any further. Yes. We didn't find or I didn't find any published case law either. I was mildly surprised by that because it's big country. And I hope that they're not wrongful levies very often. But we didn't find anything that was a published opinion. And have there been any opinions reported in other services or reasoned decisions that might not have been published? Anything else you know of another court has spoken to this? Nothing that I've been able to find. I've searched on Westlaw recently, as recently as two days ago. The statute here at issue is Section 7426G of the Internal Revenue Code, which provides that interest on a judgment for wrongful levy shall be allowed at the overpayment rate established under Section 6621. And Section 6621 provides for the overpayment rate. It says that the overpayment rate established under this section shall be the sum of the federal short-term rate determined under subsection B plus three percentage points, two percentage points in the case of a corporation. The federal short-term rate is determined under yet another code section, Section 1274, which provides for a quarterly determination based on the going interest rate on marketable securities, marketable obligations of the federal government having a term of under three years. And there's no dispute here over what that rate should be. And then following that, there's the language that is at issue here, which says to the extent that an overpayment of tax by a corporation for any taxable period exceeds $10,000, subparagraph B shall be applied by substituting 0.5 percentage point for two percentage points. So this is a corporate taxpayer within the definition of the statute. There's no dispute as to that either. The dispute is for corporate overpayments generally, the rate is the federal short-term rate plus 2 percent, but this sentence reduces that in the case of corporate overpayments over $10,000 by 1.5 percent. And the district court judge here held that that 1.5 percent reduction did not apply here because this was a judgment for wrongful levy and it was not an overpayment of tax. He thought that in order to make this rate reduction applicable to a wrongful levy, Congress would have had to say specifically that for this purpose it's treated as an overpayment of tax. And that's where we think that the district court went wrong, because what 7426G says is that interest shall be allowed at the overpayment rate established under Section 6621. So the question is, is that rate reduction part and parcel of the overpayment rate? And we submit that the most natural reading of the statute is that it is part of the definition of the overpayment rate. Alternatively, it could be that there's a question whether overpayment can be defined or understood in two different ways in the same section, or rather maybe overpayment means one thing and overpayment rate means something else, because as I understood what the approach of the district court was, it went down to I guess what we're calling the flush clause or provision. To the extent that an overpayment of tax is taking overpayment there not to mean everything that's encompassed in the section or everything that's subject to the overpayment rate, but rather within that broader category exclude wrongful levy, because that's not any kind of voluntary overpayment. That's something where money's been extracted involuntarily from the company. And harking back to the evolution of this section, there's some logic in that, isn't there? The reason for treating the overpayment and underpayment situations differently is that there was some incentive for corporations perhaps to overpay in order to achieve a certain return. Well, that incentive doesn't exist in the wrongful levy context, so I think that rationale led the district court to decide that this flush clause, overpayment in that clause doesn't necessarily encompass everything that falls within overpayment rate. Is that the logic you understand? I don't think the district court articulated that as being its rationale. It just said Congress would have had to say that a wrongful levy is treated as an overpayment in tax in order for this language to apply. But beyond that, I don't think that that reading of it is the most natural reading or the correct reading, because what the statute says is the overpayment rate. It doesn't say that it needs to be an overpayment in tax. It says the overpayment rate. So that might cut against you. I mean, what you just said, if overpayment rate can apply to more than overpayment, then it might be a natural reading of this to say that overpayment as used in the flush clause doesn't necessarily mean everything that becomes subject to the overpayment rate. And a wrongful levy, I mean, it's really kind of hard. I don't think of that as an overpayment in terms of payment suggests action by the corporation. Well, a levy is an action by the corporation, except insofar it's been unsuccessful in fending off the government's extraction. Now, the end effect is that of overpayment. Too much has been paid on the part of the corporation, but there was certainly no voluntary action by the corporation leading to that situation. Right, but I don't really think whether the payment was voluntary or not plays into the calculus at all, because the statute simply says the overpayment rate, and the overpayment rate includes that rate reduction. So it can't be simply read out of the statute. And what you're saying, I think, starts to bear on some of the arguments made by the appellee, which is that, well, the government acted wrongfully here. The government admits it acted wrongfully now at this point by not taking the appeal, so the government shouldn't be rewarded by getting a higher interest rate. But this is what Congress provided, and I don't think it's really within the court's power to ‑‑ it would be essentially rewriting the statute to say that the overpayment rate for this purpose, in this context of wrongful levy, doesn't include that sentence, that part of the language. My worry, counsel, is this. When I'm setting the overpayment rate in reading this language, I see a rate which generally is the federal short-term rate, and then I see for corporations they get two percentage points and everybody else gets plus three percentage points. Then why can't one say, and to the extent that it's an overpayment of tax by a corporation, they get .5 percentage points. So that when we're really looking at the rate, we're only looking at 1A and B, and then if we look at an overpayment of tax, we go on to the rest. Why can't one read that that way? Well, because I don't think that's the way the statute is written. You can't ‑‑ that would be changing the way the statute is written because that would be limiting that part of the definition in a way that is not there in the text of the statute. That's taking into account. Nobody says that the last paragraph is about rate. The last paragraph starts talking about an overpayment of tax. There's no question that A and B apply to rate. Well, I see my time has expired, and I'm in a deficit. I'll take the deficit here. Okay. On to the question. There's one other point that's very important entering into this, which is in another federal statute, Congress explicitly provided that this particular language, that the overpayment rate would apply, but that this particular language would not apply. And that statute is 30 U.S.C. Section 1721H, which applies to overpayments of royalties to the United States on oil and gas leases. And Congress said when the government is repaying such overpayments, it incorporated this same rate of interest, but it said specifically there that this rate reduction would not apply. So that indicates very strongly that, in Congress's view, the definition of an overpayment rate includes this, regardless of whether it's an overpayment of tax or not, because that was in the context of an overpayment of royalties. So I think that's a very strong indication. And the final point I just want to make in a sentence is that we're dealing here with a waiver of statutory immunity, which is always construed narrowly in favor of the government. And we've cited cases in our brief where that has been applied even to interest paid by the government. So I hope I'll have a moment for a rebuttal, if it pleases the Court. Thank you. Good morning. Michael Ryan on behalf of Stephen and S. Chung, Inc. The district court's decision should be affirmed for two primary reasons. First, it comports with the plain language of both of the applicable statutes, and it makes sense in the context of this case. With respect to the plain language, 7426G, which is the basis on which to award the company interest, does not say that wrongful levy judgments are deemed to be overpayments of tax or effectively treated as overpayments of tax. All it says is that you look to 6621 to determine what the applicable rate is. The exception contained in 6621 does not apply in this case, because it only applies to, quote, unquote, overpayments of tax.  The United States Supreme Court in Jones v. Liberty Glass defined an overpayment of tax as any payment in excess of that which is properly due. Here, the company did not owe the United States anything. It had its money wrongfully seized from it. However, counsel, the statute that you mentioned certainly says overpayment rate established in 6621. That's exactly what it says. So we're going to 6621 to establish the overpayment rate. If we're talking about overpayment rate, the overpayment rate for a corporation in those instances is not calculated without referring to the paragraph that you suggest only talks about an overpayment of tax. And if I'm talking about the overpayment rate altogether, I have to put in all the language in one. I can't just go with A and B. I've got to put the last paragraph in in order to establish an overpayment rate. Now, there's nothing in 7426 that tells me that I should distinguish between the stuff. It just says go there and pick the overpayment rate. And I'm still trying to find out, and I still worry about, I can't figure an overpayment rate without including that last paragraph. Even though you want to argue it only arises to overpayments, it's to the overpayment rate that it specifically addresses itself. And if I may address that, the language of that statute, of that flush language, or as the judge called it, the exception to the general rule, is that it applies to an overpayment of tax. Now, there has to be an actual payment of a tax or an overpayment of a tax. And if you read that statute further, it takes you to another subsection, which deals with, quote, unquote, large corporate overpayments. So in that statute ---- It establishes the rate in those instances. Right. But the issue here is that we didn't overpay anything. Well, but it doesn't say. The statute doesn't say we have to have overpay anything. The statute you're relying on says there's an overpayment rate as calculated in this section, and this overpayment rate cannot be calculated by only using A and B. I have to use the second paragraph to determine what the rate is. So how can I say it's an exception? It's a part of the whole. Well, the government admits it's an exception in their brief as well because it only applies to certain types of overpayments, large corporate overpayments. And I think the key phrase is the overpayment of tax. So it presupposes that something was actually due to the government, that it was some type of tax. Here what you have, as the Ninth Circuit said in Flores, to take property from the hands of an interested third party is more than simply to require that individual to pay taxes, that tax is levied upon in due course. So there's something uniquely different about the context of this case, because here the payment wasn't voluntary. The company did not want to have its assets seized. It simply had them seized and had to defend itself, or had to file a lawsuit to get those proceeds, to get their property back. So it's a much different situation. But what the government's arguing, as I understand, is that that's all taken care of back in the other section. And then we go to overpayment rate to see how much interest we pay. You've got all those remedies under the other section, but we've got to find a rate. And they also argue we've got another section where Congress specifically said don't take that into account. That wasn't said here. I'd like to address the 1721 argument, because I think the issue there is it does take out certain payments, certain overpayments that are actually owed to the United States. If you go in and read the Oil and Gas Lease Act, which they refer to in 1721H is, I believe, the section that they refer to. But if you go back to 1701, 30 U.S.C. 1701, it explains what the purpose of the Oil and Gas Lease Act, and the purpose of that act is to create a uniform system of ensuring that the government is getting what it's rightfully owed on certain oil and gas leases. And then if you go to 1702, it defines what a royalty is, and a royalty is something that is owed to the United States or to a tribal government. So it's more akin to a tax in the sense it's in that it's something that is actually owed to the United States. But in the context of a wrongful levy case, what you have is a company's assets were wrongfully seized, and in this case, in fact, negligently seized. So there was nothing that it's not akin to a tax in any way because there was nothing the company could do to avoid it. The company owed no obligation whatsoever to the IRS when they came and basically took our client's property. Well, I'll be fair. It doesn't seem to me that the government, especially when one party is in control, is that excited about helping out corporations. Well, that corporation gets less in this particular time on an overpayment rate, and tremendously less if it's over $10,000, incomparable to the whole rate. Now, what I'm trying to do is understand why, when that's the only way I can compare, make the rate, is to use the third paragraph that says an exception, which is what the district court said. But the underlying statute here is important. We're in the context of 7426, which is the wrongful levy statute, which is one of the few exceptions to the Anti-Injunction Act. And this Court in Flores made clear that when interpreting the code, and in particularly 7426, the Court needs to be mindful that, one, the code is not monolithic and can apply differently in different situations to different parties. And that's the uniqueness of 7426, because it's not like 7422. That's tough, though, because 7426 specifically adopts something else. It would have been simple for Congress to provide it a different rate for wrongful levies right there. Instead, it reaches out in the way that statutes, unfortunately, frequently do by saying, go look over there. When you go look over there, there's no reference to wrongful levies as being treated separately. So either by doing language like they have in the oil and gas section or by just putting a different provision in 7426 about wrongful levies, Congress could have clearly provided for a different kind of rate or a better rate for wrongful levies, and it doesn't. It says use overpayment rate. I think the key is that exception that was put in, the flush language was put in in 1994, and the language in 7426G changed in 1986. Now, if you look at the purpose behind the flush language, it was to prevent distortions, in other words, to prevent large corporations from purposefully overpaying their taxes to basically manipulate interest rates from the government. Clearly, in a wrongful levy case, no one can seriously argue that our client sat there and had their money wrongfully taken and seized simply to somewhere down the road get a better rate of interest. So the purpose underlying the flush language and the legislative history revolving around that would not be served by the government's reading of the statute, which in our opinion is not correct because it deals with an overpayment of tax and this is not a tax. Now, I would also like to briefly address, if I may, the issue of whether or not the company would be entitled to fees on appeal. We've requested our fees on appeal if we're successful. We recently cited to the court a 28J letter of the Huffman case from this court, which says when there's a substantial justification finding that it may entitle a party to fees on appeal, and it cites the Fifth Circuit's decision in Powell. And I think it's consistent with the United States Supreme Court's decision in Commissioner of INS v. Gene, which basically said once there's a substantial justification finding, like a finding of prevailing party, it acts as a one-time threshold for fee eligibility. So the IRS's position that each individual issue needs to be not substantially justified I don't think is consistent with Ninth Circuit law or Supreme Court law. And if I may sum up very briefly, Your Honor, no court has ever held that a wrongful levy judgment is an overpayment for purposes of calculating interest. Both the plain language of the applicable statutes as well as the context of this case demonstrate that the IRS's position is incorrect and the district court should be affirmed. I would submit to suggest that whichever way we come out, we're not going to say that either. All we're going to say is, what is the way you correctly apply the language of the statute as to the rate? Any further questions? No. Thank you. Mr. Rosenberg, we'll give you one minute. Thank you, Your Honor. One thing that I think is very important to correct that counsel said was that he said that we had conceded in our brief that this language was an exception to the rule. I don't think we said that in our brief, and I certainly don't concede that now because it's not an exception. It's part of the rule that the rate has to be reduced for the corporate overpayments. Also, the purpose of the rate differential as reflected in the legislative history is that the rate paid by the government on overpayments should reflect market rates, and so the corporation should get essentially the same interest rate that it would get if it invested its money, and I think that purpose is served here because by giving effect to that rate reduction, that means that the rate of interest that's paid is the rate that Congress intended, which would be roughly equivalent to the market rate. You're well into the second deficit, so we'll have to conclude here.  Thank both counsel for your argument. The case just argued is submitted. The next case on today's calendar has been submitted on the briefs. That's Roberts v. Hegner, so the next case for argument today is Sisko v. Estrue.
judges: Clifton, Smith, Sandoval